UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

KEITH BAILEY,

        Petitioner,

v.                                      Case No. 15-cv-584-pp

BRIAN FOSTER,

        Respondent.

**ORDER ADOPTING JUDGE DUFFIN'S RECOMMENDATION (DKT. NO. 25), DENYING PETITION FOR WRIT OF *HABEAS CORPUS* (DKT. NO. 1), DENYING REQUEST FOR CERTIFICATE OF APPEALABILITY (DKT. NO. 27), AND DISMISSING CASE**

        Petitioner Keith Bailey filed a petition for writ of *habeas corpus* under 28 U.S.C. §2254, challenging his 2012 conviction in Kenosha County on two counts of first-degree sexual assault. Dkt. No. 7. The case was assigned to Judge Charles N. Clevert, Jr. on July 9, 2015. Judge Clevert granted several extensions of time, and the parties did not finish briefing the petition until June 24, 2016. Following Judge Clevert's retirement in March of 2017, the case was reassigned o this court. This court referred the case to a magistrate judge for the preparation of a report and recommendation. Dkt. No. 24.

        On June 29, 2018, Judge William E. Duffin issued his report, recommending that this court deny the petition because the petitioner had failed to raise a claim on which he is entitled to relief. Dkt. No. 25. Judge Duffin also recommended that the court decline to issue a certificate of

1

appealability, because the petitioner had failed to make a substantial showing of the denial of a constitutional right. Id. at 12. The order advised the plaintiff that he had fourteen days to file an objection. Id. at 12-13.

The petitioner filed a one-paragraph objection on July 19, 2018. Dkt. No. 26. He also filed a request for a certificate of appealability, dkt. no. 27, and a brief in support of that request, dkt. no. 28. The court will adopt Judge Duffin's recommendation, deny the petition, deny the petitioner's request for a certificate of appealability and dismiss the case.

I.   **Standard of Review.**

Under Federal Rule of Civil Procedure 72(b), the district court must decide "*de novo*"—starting from the beginning, without deferring to the magistrate judge's conclusions—any part of the magistrate judge's ruling to which the petitioner properly objects. Fed. R. Civ. P. 72(b). The petitioner has objected to Judge Duffin's findings on the issue of juror bias and "prosecutorial conduct closing argument." Dkt. No. 26. The court has conducted a *de novo* review of those issues.

II.  **BACKGROUND**

   A.   The Trial Court

In 2010, the state charged the petitioner and a co-defendant, Eddie "Memphis" Walker, in separate complaints with first-degree sexual assault of two women in February of 2009 and 2010. Dkt. No. 12-3 at 6. The cases were consolidated, and the state was allowed to amend the information to include two separate counts of first degree sexual assault, party to a crime. Id.

2

Trial began on November 7, 2011, with jury selection. Dkt. No. 12-10 at 21. During *voir dire*, none of the prospective jurors raised their hands when asked whether they did *not* believe that the state and defendant were entitled to a fair trial. Id. at 41. When asked if any of them had been sexually assaulted or knew of someone who had been sexually assaulted, several jurors raised their hands. Id. One juror, M.P., revealed that she knew someone who had been assaulted, and asked to speak privately to the court and the lawyers in the conference room. Id. at 43. M.P. privately revealed that her son-in-law had sexually assaulted her grandson's male friend. Id. at 44. She said she understood that the petitioner had a different case with different people involved. Id. M.P. thought she could decide the petitioner's case on the evidence presented and that her bad feelings were specific to her son-in-law, not to the crime for which he was convicted. Id. at 45. When defense counsel asked, "And you believe that you can sit and listen to testimony from different sources and separate that from sounds like the visceral feeling that you have for your son-in-law?", she said "yeah, I think so. Yes." Id. at 46.

Another juror, L.W., revealed that she had been sexually assaulted by an Air Force colleague in 2001 at Sheppard Air Force Base in Wichita Falls, Texas, after she took a sleeping pill. Id. at 46-47. The prosecutor asked whether she had any injuries that someone could photograph, and she responded that she bruises easily. Id. at 48. Later in *voir dire*, L.W. said she believed that officers treated her unfairly in one of two drunk driving arrests. Id. at 66-67. Even so, she did not think she would be biased against the police, because "different

3

officers, everybody's different." Id. at 67. When asked, "Is there anybody here who, in order to render a verdict, has to be shown some kind of physical evidence like DNA or photographs or videos, something outside of just testimony from a witness," this same juror said, "Yes. There'd have to be some pretty good evidence or something" because "it's a serious charge that's going to affect his life for the rest of it." Id. at 90. No one—neither the parties nor the court—asked this juror whether her experience as a sexual assault victim might impact her ability to be fair and impartial. At least seven other potential jurors knew people who had been sexually assaulted by friends or family members. Id. at 42, 48-56.

At trial, the state called the two women who had filed the complaints against the petitioner. Both had known the petitioner before the assaults, but they did not know each other. Dkt. No. 12-11 at 63. The first woman, Janet, testified that the petitioner and co-defendant Memphis forced her into her apartment on February 16, 2009 and that both men participated in the rape. Id. at 64-70. Janet reported the rape to the hospital, and then to officers at the station. Id. at 72. She canceled her complaint at the time because she was scared. Id. at 73. The second woman, Cassandra, also testified she knew the petitioner before her assault. Dkt. No. 12-12 at 24. The petitioner and co-defendant Memphis had offered to drive Cassandra home. Id. at 27. She testified that on February 14, 2010, they took her to the basement, grabbed her hair, forced her to the ground, removed her clothes and that both men sexually assaulted her. Id. at 33-42. The state called multiple other witnesses

4

to testify, but did not offer DNA evidence linking the petitioner to either crime (Memphis's DNA was on Cassandra, id. at 131).

During closing arguments, the prosecutor focused on the similarities between the assaults as told by two women (ages 17 and 31) who did not know each other—in the same building, simultaneous assault with both men, the petitioner started the assault, and the petitioner used a condom (Memphis did not). Id. at 12-12 at 138-141. The prosecutor also focused on petitioner's credibility:

> Here's one thing we know for sure. This defendant lied in that interview room. Why would he lie to two detectives investigating sexual assault charges against him? Not just for the fun of it. He lied because the truth was dangerous to him.
>
> What did the defendant lie about? A man named Memphis, the codefendant. He lied about how well he knew Memphis, how long he'd known him, where the man lived. Why did the defendant say Memphis was from Chicago? Because if Memphis was from Chicago and the detectives didn't know his real name, then they wouldn't find him and this defendant did not want the detectives to find Memphis.
>
> He wanted to throw them off Memphis' trail. Why? Because if the detectives talked to Memphis and Memphis might talk and that would be dangerous for this defendant. Memphis might sell him out or Memphis might give a story that did not jibe with this defendant's story and either one of those possibilities was dangerous for this defendant. So this defendant lied about Memphis so that the detectives would not find him because Memphis could be dangerous to this defendant.

Dkt. No. 12-12 at 129-130.

The petitioner's counsel responded that he had heard the state trying to explain its case through conjecture and assumption, without a "whole lot of evidence from the state." Id. at 145.

> . . . There's ample evidence for you to conclude that [Bailey] knew Memphis longer than he said he did. However, the fact that he knew Memphis longer than he said he did, to assume he's doing that because he's trying to protect himself, that's conjecture.

Id. at 149.

> Now, I know, because there's some things that Mr. Bailey wasn't honest about . . . that he knew Memphis. Okay? But just because he's lying about his friend doesn't mean it's because he's afraid his friend is going to roll over on him. It just makes just as much sense of not wanting to get your friend in trouble. You're trying to protect somebody close to you.

Id. at 156.

In rebuttal, the prosecutor said:

> This defendant again and again and again is questioned about his relationship with Memphis. And there's no mistake there. It's crystal clear what's being asked and it's crystal clear from the testimony, and his attorney admits he lied, he lied about that. [Defense counsel] used the word "conjecture" quite a bit.
>
> \* \* \* \*
>
> When [defense counsel] says that it's mere conjecture for me to say that Memphis was lying to protect himself, I dispute that. That's not conjecture. That's common sense. People lie for a reason. If he was lying to protect Memphis, if he was innocent, why did these two women say he assaulted them also? If he is essentially conceding that Memphis committed a sexual assault but not this defendant, which would be the reason to protect Memphis, then why does Cassandra say that both men were involved? It come[s] back[] to motives. It continues to come back to motives.

Id. at 159-160.

The jury returned a guilty verdict on two counts of first-degree sexual assault, as a party to a crime. Dkt. No. 1 at 2. The court sentenced the petitioner to forty years in state prison with extended supervision to follow, to run consecutively to a sentence imposed in a different case. Dkt. No. 12-2 at 1.

6

In a post-conviction motion the petitioner argued that jurors M.P. and L.W. should have been removed from the jury panel for bias. Dkt. No. 12-3 at 45-49. The circuit court denied the motion, finding that juror M.P. had "clearly answered that she could be fair, answered yes several times over." Dkt. No. 12-3 at 59. Regarding L.W., the court found that "her answers were clear in that she indicates she understands the difference [between her own assault and the facts of the petitioner's case], she understands the severity of these charges, she doesn't indicate any type of bias in her questioning." Id. The petitioner also argued that in closing and rebuttal, the prosecutor argued that the petitioner had "essentially conceded" that a sexual assault had occurred and that co-defendant Memphis was involved. Id. at 60-61. The petitioner's post-conviction counsel argued that the petitioner never had conceded that a sexual assault had occurred, or that Memphis had committed such an assault, and that for the state to argue as much denied him his right to a fair trial. Id. at 62-63. The court denied this part of the motion (after reviewing the transcript of the closing arguments), stating that the judge "[did] not believe that any interpretation of the arguments in closing could be construed to say that [defense counsel] conceded that there was a sexual assault or that—nor did [the prosecutor] leave the impression on the jury that there was a concession that there was a sexual assault." Id. at 73.

B.   The Appellate Court

On direct appeal, the petitioner argued that the court should vacate his conviction because of jury bias and improper closing arguments. Id. at 5. The

7

Wisconsin Court of Appeals affirmed on January 15, 2014. State v. Bailey, 843 N.W.2d 710 at *1 (Ct. App. 2014). In affirming, the Wisconsin Court of Appeals first considered the petitioner's arguments about objective and subjective bias. Id. at *2. It noted that the circuit court had found that the first juror, M.P., could fairly consider the petitioner's case, and concluded that that decision was not clearly erroneous based on the record. Id. The juror knew the petitioner's case differed from the one in which she had personal knowledge, and she thought she could be fair and that her bad feelings were limited to her son-in-law. Id.

Similarly, the appellate court found the second juror, L.W., had not "manifest[ed] any type of bias during voir dire." Id. The second juror understood the difference between her case and the petitioner's case. Id. The petitioner had argued that the court of appeals should presume that L.W. was biased, because neither trial counsel nor the trial court asked her questions about potential bias resulting from her own assault. Id. The appellate court rejected this argument, finding that the law required the court to presume impartiality, not bias. Id. (citing State v. Smith, 716 N.W.2d 482 (Wis. 2006)). The petitioner also argued that the trial court had an independent duty to inquire, once it became aware that L.W. had been the victim of an assault. Id. The appellate court rejected this argument, as well, noting that L.W. had not "identif[ied] herself as a person who would be unable to be an impartial juror when the State posed the question to the entire venire," and that when asked by defense counsel about whether a juror would require physical evidence such

as DNA to reach a verdict, the second juror said "there'd have to be pretty good evidence or something, I mean, that's—it's a serious charge that's going to affect his life for the rest of it." Id. The court of appeals concluded that L.W. clearly knew the case was important to the petitioner, and also noted that "a sexual assault victim is not automatically precluded from serving as a juror in sexual assault trial." Id. (citing State v. Erickson, 596 N.W.2d 749 (1999)).

Turing to the petitioner's arguments regarding the prosecutor's remarks, the court of appeals agreed with the circuit court that the remarks did not suggest that the petitioner had conceded a sexual assault occurred or that Memphis had participated in it. Id. at *4. Rather, the court found, the prosecutor had argued that the petitioner had not been truthful during the investigation about his relationship with Memphis. Id. These remarks did not so infect "the trial with unfairness as to make the resulting conviction a denial of due process." Id. (quoting State v. Mayo, 734 N.W.2d 115 (Wis. 2007)). Because the law allowed a lawyer to argue that the evidence supports many inferences, the appellate court concluded that the prosecutor's remarks were not improper. Id. (citing State v. Draize, 276 N.W.2d 784 (1979)).

The Wisconsin Supreme Court denied the petitioner's petition for review on May 22, 2014. Dkt. No. 12-8. The petitioner did not file a petition for *certiorari* in the United States Supreme Court. Dkt. No. 1.

    C.    <u>The Federal Magistrate Judge</u>

The petitioner filed his federal *habeas* petition on May 14, 2015, raising three grounds for relief. Dkt. No. 1 at 6. The first ground argued juror bias as

9

to M.P., id. at 6-7; the second argued juror bias as to L.W., id. at 7-8. The petitioner's third ground focused on the prosecutor's "inflammatory" remarks during closing, which the petitioner asserted denied him of his right to a fair trial. Id. at 8.

After reviewing the decision of the Wisconsin Court of Appeals, Judge Duffin examined the juror bias claims under the due process clause of the Fourteenth Amendment. Dkt. No. 25 at 5. He found that the court of appeals' conclusion that the first juror was not biased was reasonable, because her experience differed from the charges pending against the petitioner and her "bad feelings" were directed at her son-in-law. Id. at 7. She testified that she could decide the case based solely on the evidence in court. Id.

As to the second juror, Judge Duffin rejected the petitioner's argument that the circuit court should have removed the juror *sua sponte*, noting that the Supreme Court never has held that a defendant is denied a fair trial simply by virtue of a juror having been the victim of a similar crime. Id. To the extent that the petitioner argued that counsel was ineffective for failing to ask L.W. questions about possible bias based on her assault, Judge Duffin pointed out that the court of appeals had noted that the petitioner did not call counsel to testify at the post-conviction hearing (even though he couldn't prove an ineffective assistance claim without it), and found that he had waived the opportunity to present the testimony of counsel to the court. Id. at 8-9. That caused Judge Duffin to consider whether the petitioner had procedurally defaulted on his ineffective assistance of counsel claim. Id. at 9. To overcome

10

procedural default, Judge Duffin explained, the record had to show that the trial lawyer's performance "was both unreasonable and prejudicial." Id. Judge Duffin concluded that the record did not support such a finding. Id. at 9-10. In fact, he speculated, defense counsel may have had reason to *want* L.W. on the jury, because she expressed skepticism about convicting someone based solely on witness testimony. Id. at 9. For these reasons, Judge Duffin concluded that the petitioner could not prevail on his juror bias claims. Id. at 10.

As for the prosecutorial misconduct claims, Judge Duffin discussed the Supreme Court standard articulated in Darden v. Wainwright, 477 U.S. 168 (1986). Id. at 13. Under this standard, the court determines whether the comments were improper and, if so, whether the defendant was prejudiced by the comments. Ellison v. Acevedo, 593 F.3d 625, 635-36 (7th Cir. 2010). Judge Duffin agreed with the state court of appeals that the prosecutor's statement was not improper. Dkt. No. 25 at 12. He found that one could reasonably infer from the fact that the petitioner lied about Memphis to protect Memphis that the petitioner knew Memphis committed the rapes. Id. From *that* inference, one could properly infer that the petitioner was involved in the rapes, because the victims testified that the two men had committed the rapes together. Id. Thus, Judge Duffin concluded, the prosecutor's statements to that effect were not improper. Id.

### III. ANALYSIS

A federal court may not grant *habeas* relief unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly

11

established Federal law, as determined by the Supreme Court of the United States," or was based on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). In other words, the federal court decides whether the state court used the wrong legal standard, or applied the correct standard unreasonably. Ward v. Neal, 835 F.3d 698, 703 (7th Cir. 2016). "An unreasonable application of federal law is different from an incorrect application of federal law." Id. (quoting Harrington v. Richter, 562 U.S. 86, 101 (2011)). The state prisoner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 562 U.S. at 103.

    A.    <u>Juror Bias</u>

The Wisconsin Court of Appeals applied the correct legal standard to the petitioner's juror bias claim, and did so in a reasonable manner. As Judge Duffin explained, due process rights guarantee a defendant a jury "capable and willing to decide the case solely on the evidence before it," and a trial judge "ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen." Smith v. Phillips, 455 U.S. 209, 217 (1982). If a trial judge becomes aware of a possible source of bias, the court must "determine the circumstances, the impact thereof upon the juror, and whether or not it was prejudicial." Oswald v. Bertrand, 374 F.3d 475, 478 (7th Cir. 2004) (quoting Remmer v. United States, 347 U.S. 227, 230 (1954)). On the

12

other hand, the Supreme Court has approved a "presumption of prejudice . . . only [in] the extreme case." Skilling v. United States, 561 U.S. 358, 381 (2010) (finding no presumption of prejudice where defendant had significant pretrial press exposure in the community in which his trial took place).

The Seventh Circuit has explained the "critical difference" between a juror's personal beliefs and a bias that requires disqualification:

> Everyone brings to a case a set of beliefs that may incline him in one direction or another. A person told that X had been indicted, and asked whether he thought X guilty, might reply that he thought X probably was guilty because few innocent people are indicted. That would be a prior [belief]. It would be a bias only if it were irrational or unshakable, so that the prospective juror "would be unable to faithfully and impartially apply the law," Wainwright v. Witt, 469 U.S. 412, 424, 105 S. Ct. 844, 83 L. Ed. 2d 841 (1985) (emphasis added), would be, in other words, "adamant," Fleenor v. Anderson, 171 F.3d 1096, 1099 (7th Cir. 1999)—in our hypothetical if, for example, the person added, "Nothing will ever convince me that the government would indict an innocent person."

Griffin v. Bell, 694 F.3d 817, 824 (7th Cir. 2012) (quoting Thompson v. Altheimer & Gray, 248 F.3d 621, 625 (7th Cir. 2001)). The court also has held that "juror *impartiality* . . . does not require *ignorance*." Skilling, 561 U.S. at 381 (citing cases) (emphasis in the original).

The court of appeals combed the record, and found no evidence of objective or subjective bias (or what the Seventh Circuit calls an "irrational or unshakable bias"). Juror M.P. acknowledged that the petitioner's case was different from her own experience, and stated more than once that she believed she could decide the case based solely on the evidence. Bailey, 843 N.W.2d 710, at *2. As to L.W., the court found that the sole fact that she had been the victim of a sexual assault years

13

earlier did not mandate her removal from the jury. Id. The court of appeals cited the circuit court's finding that L.W. understood the difference between her case and the petitioner's, and that she did not "manifest any type of bias during *voir dire.*" Id. The court of appeals also distinguished the petitioner's case from Oswald, where the jurors had discussed the case among themselves during the four-day selection process. Id. Although the Seventh Circuit found in Oswald that a judge's inquiry was inadequate where there was a "high probability that some, maybe all, of the jurors . . . were biased," Oswald, 374 F.3d at 480, the court of appeals was right that there was no such "high probability" in this case.

The court of appeals also considered the implications of the petitioner's claim that counsel should have followed up by asking L.W. more questions. The petitioner did not develop the postconviction record on why counsel did not challenge L.W. or question her further based on her personal experience. Trial counsel was present at the postconviction motion hearing, but postconviction counsel did not object or ask the circuit court to preserve trial counsel's testimony. Bailey, 843 N.W.2d 710 at *2. As Judge Duffin explained, the Supreme Court's decision in Strickland v. Washington, 466 U.S. 668, 687 (1984) requires a showing of deficient performance and prejudice. Dkt. No. 25 at 8. The court of appeals appears to have considered these prongs in finding that the postconviction record was undeveloped on the question of why trial

14

counsel did not challenge L.W. or question her further based on her personal history. Bailey, 843 N.W.2d 710 at *2. Without evidence that L.W. harbored a bias against the petitioner, or that more questions would have uncovered evidence of a bias, the court of appeals' decision was not unreasonable.

The court of appeals applied the correct standard, and its conclusion was not contrary to the established law.

### B.   Prosecutorial Misconduct/Fair Trial

The clearly-established federal law relevant to the petitioner's second argument—prosecutorial misconduct during the closing argument—is in Darden v. Wainwright, 477 U.S. 168, 181 (1986). In Darden, the Supreme Court explained that a prosecutor's improper comments violate the Constitution only if they 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Parker v. Matthews, 132 S. Ct. 2148, 2153 (2012) (citing Darden, 477 U.S. at 181). Darden established a two-part framework to evaluate "whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Id. First, the court evaluates whether the prosecutor's comments were improper. Id. Second, if the comments were improper, the court asks whether the improper comments prejudiced the defendant—whether the improper comments rendered the trial "fundamentally unfair." Id. at 181-83.

The court of appeals found that the prosecutor's remarks regarding the petitioner lying to protect Memphis did "not so infect 'the trial with unfairness

15

as to make the resulting conviction a denial of due process.'" Bailey, 843 N.W.2d 710 at *4. Agreeing with the circuit court, the court of appeals construed the prosecutor's argument as a statement that the petitioner had not been truthful about his relationship with Memphis. Id. It concluded that it was reasonable for the prosecutor to infer from the petitioner's having lied about Memphis that he was trying to distance himself from Memphis because Memphis had information that could hurt the petitioner. Id.

Judge Duffin agreed; this court does, as well. Counsel has "more leeway in closing arguments to suggest inferences based on the evidence, highlight weaknesses in the opponent's case, and emphasize the strengths of their own case." Soltys v. Costello, 520 F.3d 737, 745 (7th Cir. 2008). That is what the prosecutor did here—he suggested a string of inferences.

The prosecutor pointed out in his closing statement that the petitioner had lied about how long the petitioner had known Memphis, and about where Memphis was from. He argued that there had to be a reason that the petitioner had lied about his relationship with Memphis, and inferred that the reason he'd lied was because the petitioner did not want law enforcement to find Memphis. Why would the petitioner not want law enforcement to find Memphis? Because, the prosecutor inferred, Memphis might know things, and tell law enforcement things, that would get the petitioner in trouble. In his closing statements, the defendant's lawyer disputed these inferences. The prosecutor then said in rebuttal, "If [the petitioner] is essentially conceding that Memphis committed a sexual assault but not this defendant, which would be

16

the reason to protect Memphis, then why does Cassandra say that both men were involved?" Dkt. No. 12-12 at 160.

This statement was not improper. The prosecutor couched the statement as a hypothetical. The hypothetical asked the jury to assume that the petitioner's lies "essentially" amounted to a concession that *Memphis* had committed "a sexual assault," but that the petitioner had not. Against that hypothetical, the prosecutor asked the jury to consider why the second victim identified both Memphis and the petitioner as her assailants. Prosecutors (and defense attorneys) can draw such inferences in their arguments, and the prosecutor had a good faith basis for drawing these inferences.

Another thing—the trial court gave the jury a detailed set of instructions before the jury went back into the jury room to deliberate. It specifically told the jurors, "Consider carefully the closing arguments of the attorneys, but their arguments and conclusions and opinions are not evidence. Draw your own conclusions from the evidence and decide upon your verdict according to the evidence under the instructions given you by the Court." Dkt. No. 12-12 at 123. The prosecutor's statements were not improper, and they did not "infect" the petitioner's trial with unfairness. Even if there had been some whiff of impropriety about the statements, however, the court made clear to the jurors that the remarks of the lawyers were not evidence.

Finally, this court finds it significant that both victims testified at the petitioner's trial, and both testified that they knew him *before* the assaults. Both identified him as one of the men who assaulted them. This is not a case

17

in which the victims identified a stranger from photographs or a lineup. These victims testified that someone they knew had assaulted them. Multiple other witnesses testified. The prosecutor's remarks occurred in that context. He was not asking the jurors to convict the petitioner solely because the petitioner had lied about his relationship with Memphis. The prosecutor was arguing that those lies contradicted the direct testimony of the victims, and asked the jury to draw reasonable inferences about the reasons for such contradictions.

In sum, the court of appeals applied the correct standard, and its decision was not contrary to established law; the decision was reasonable.

C.   Conclusion

The petitioner raised these issues before the trial court, which considered them thoroughly and in detail. He raised them before the court of appeals, which did the same. He raised them before Judge Duffin, who did the same. Three courts have concluded that the petitioner's claims of juror bias and prosecutorial misconduct have no merit. This court agrees with Judge Duffin that the court of appeals applied the correct standards, and that its decision was not contrary to established law. This court accepts Judge Duffin's recommendation and denies the petition.

IV.   **CERTIFICATE OF APPEALABILITY**

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts says that whenever a district court enters a final order that is adverse to the petitioner, it must either issue or deny a certificate of appealability. A district judge may issue a certificate of appealability only when

18

a petitioner has made "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), and when "jurists of reason could . . . disagree" as to whether the court wrongly decided the issue, <u>Walton v. Schwochert</u>, Case No. 10-cv-117, 2010 WL 4318887 at *2 (E.D. Wis. Oct. 25, 2010). Because reasonable jurists would not disagree with the court's conclusions, the court declines to issue a certificate of appealability.

## IV.     CONCLUSION

The court **ADOPTS** Judge Duffin's recommendation. Dkt. No. 25.

The court **DENIES** the petitioner's petition for writ of *habeas corpus*. Dkt. No. 1.

The court **DENIES** the petitioner's request for a certificate of appealability. Dkt. No. 27.

The court **ORDERS** that this case is **DISMISSED**.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within thirty (30) days of the entry of judgment. See Fed. R. of App P. 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the thirty-day deadline. See Fed. R. App. P. 4(a)(5)(A).

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Rule 59(e) must be filed within twenty-eight (28) days of the entry of judgment.

The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2). Any motion under Rule 60(b) must be filed within a reasonable time, generally no more than one year after the entry of judgment. The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2).

The court expects the parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 28th day of September, 2018.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**United States District Judge**